**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

In re:

**CHARLES R. LIVECCHI, SR.,**

CASE NO. 09-20897

                Debtor.      DECISION & ORDER
_____

## BACKGROUND

On April 8, 2009, Charles R. Livecchi, Sr. ("Livecchi"), filed a petition initiating a Chapter 11 case.

On February 15, 2011, Livecchi filed an EMERGENCY MOTION REQUESTING THE IMMEDIATE RECUSAL OF HONORABLE JUDGE NINFO FROM THE CASES INVOLVING THE DEBTOR CHARLES R. LIVECCHI, SR. AND THE IMMEDIATE STAY OF ALL ACTIONS AND PROCEEDINGS UNTIL NEW JUDGE IS APPOINTED (the "Recusal Motion").

### A. GENERAL BACKGROUND

The relevant background for the Recusal Motion is as follows:

1. As set forth by Livecchi in his Recusal Motion, his sole purpose in filing a Chapter 11 case was to preserve his assets and reorganize pending the outcome of an appeal of a pre-petition judgment, entered on March 31, 2009, in favor of the United States of America, Department of Housing and Urban Development ("HUD"), in the amount of $962,876.00, plus prejudgment interest in the amount of $206,156.00 and costs (the "HUD Judgment"), which Livecchi had

appealed but had not fully perfected at the time he filed his petition;

2. On July 7, 2009, HUD filed an Adversary Proceeding against Livecchi, which requested that the Court determine that the amounts due on the HUD Judgment, which was for equity skimming, were nondischargeable, pursuant to Sections 523(a)(4), 523(a)(6) and 523(a)(7) (the "HUD Adversary Proceeding"). With the consent of the parties, the HUD Adversary Proceeding was indefinitely adjourned until a final determination on the appeal of the HUD Judgment;

3. On July 15, 2009, an application, which requested that Richard Dollinger, Esq. be appointed as the attorney for Livecchi to pursue the appeal of the HUD Judgment, was withdrawn, after the applicant was appointed to a New York State Court Judgeship;

4. On December 21, 2009, the City of Grand Prairie, Texas ("Grand Prairie") filed a Motion to Confirm that: (a) the Automatic Stay, provided for by Section 362, did not apply to the exercise of its police power with respect to code violations which existed or might thereafter exist at a 139-unit apartment complex, known as the Barrington Apartments, located at 701 South Great Southwest Parkway, Grand Prairie, Texas ("The Barrington"), which was owned by Livecchi and operated by him for approximately eighteen years; or (b) in the alternative, the automatic stay be terminated to allow it to exercise its police powers with respect

**Page 2**

**BK. 09-20897**

to The Barrington (the "Grand Prairie Stay Motion"). The Grand Prairie Stay Motion was ultimately granted, and an order was entered on February 22, 2010. Throughout the Livecchi case, Grand Prairie has had issues with code violations and the operations at The Barrington;

5. On January 21, 2010, the Office of the United States Trustee (the "U.S. Trustee") filed a Motion to Convert Livecchi's Chapter 11 case to a Chapter 7 case (the "Motion to Convert"), at a time when Livecchi had failed to: (a) file a Chapter 11 Plan and Disclosure Statement; or (b) finally have an attorney appointed to pursue the appeal of the HUD Judgment;

6. The Motion to Convert asserted that: (a) although Livecchi had indicated that a successful appeal of the HUD Judgment was key to a successful Chapter 11 reorganization and the payment of his creditors, more than nine (9) months had elapsed since the filing of his petition, and no attorney had been authorized and employed to prosecute the appeal; (b) the U.S. Trustee had concerns about the completeness of Livecchi's monthly operating reports; (c) no proof of insurance had been provided for 9607 Windy Hollow Drive, Irving, Texas, as requested by the U.S. Trustee; and (d) Livecchi had failed to file a plan and disclosure statement, which indicated an inability or lack of interest in effectuating a plan of reorganization;

7. At an April 29, 2010 adjourned hearing on the Motion to Convert, after the Court had adjourned an initial hearing to permit Livecchi to file late opposition, the Motion was once again adjourned by the Court to July 14, 2010, with the requirement that Livecchi file a consensual or confirmable Chapter 11 plan and disclosure statement by June 28, 2010, or the Motion to Convert would be granted;

8. On May 24, 2010, an Order was entered (the "Attorney Order") authorizing the employment of Lawrence J. Mattar, Esq. and Jonathan Schapp, Esq., as special counsel for the purpose of prosecuting a New York State Supreme Court action against an attorney for malpractice (the "Malpractice Action") in connection with the proceedings that resulted in the HUD Judgment, as well as to prosecute the appeal of the HUD Judgment;

9. On June 28, 2010, the last day possible, Livecchi filed a Chapter 11 Plan of Reorganization (the "Chapter 11 Plan"), as well as a Disclosure Statement, and an Order was entered setting a hearing on the Disclosure Statement for August 26, 2010;

10. At the July 14, 2010 adjourned hearing, the Motion to Convert was further adjourned to the August 26, 2010 hearing on the Disclosure Statement;

11. On August 16, 2010, the U.S. Trustee filed a Supplemental Affirmation in Support of the Motion to Convert, which asserted that: (a) notwithstanding that Livecchi had failed to interpose

**Page 4**

timely opposition to the Motion to Dismiss, the Court had allowed Livecchi to: (i) file a late response (the "Response") to the Motion; and (ii) file a Plan and Disclosure Statement, provided that the Plan would be feasible only if it was to be funded from the operations of Livecchi's various income-producing properties and/or from the sale of some or all of those properties, and that the proceeds of the Malpractice Action, if any, would only be an additional source of funding that would accelerate the repayment to creditors; (b) upon information and belief, the attorneys authorized by the Attorney Order to prosecute the Malpractice Action and the appeal of the HUD Judgment had withdrawn, or intended to withdraw, leaving Livecchi, once again, without representation in those matters; (c) despite the representation made in the Response that Livecchi would list five of his income-producing properties for sale, no action had been taken to appraise or formally list those properties; (d) Livecchi's Chapter 11 Plan did not provide for the sale of any income-producing properties, rather it relied on the proceeds of the Malpractice Action to fund the repayment to creditors, along with nominal monthly payments of one thousand dollars per month; (e) the Disclosure Statement did not contain adequate information so that it could be approved by the Court, and it did not provide for the payment of the HUD Judgment, or the amounts due to Grand Prairie, which had filed a proof of claim in the case; and (f) cause existed to convert the

**Page 5**

case to a case under Chapter 7, because: (i) the Debtor had failed to move the Court case forward in any meaningful way since his filing on April 8, 2009; (ii) the Chapter 11 Plan and Disclosure Statement were filed in bad faith, since they did not comply with the Court's directions, and the Plan was not otherwise confirmable under Section 1129, having not provided for payment of the HUD Judgment and the amounts due to Grand Prairie; and (iii) taken together, Livecchi's actions and inactions indicated an inability to effectuate substantial consummation of a confirmed plan;

12. After HUD, Grand Prairie and HSBC Bank filed Objections to the Disclosure Statement, and HUD and Grand Prairie filed papers in support of the Motion to Convert, the Court conducted a further hearing on the Motion to Convert on August 26, 2010. At that time, the Court, once again, adjourned the hearing to September 15, 2010, over the objections of the U.S. Trustee and creditors, so that Livecchi could make himself available for a 2004 Examination, at which the U.S. Trustee and participating creditors could question him as to his commitment to list and sell some of his income-producing properties in order to fund a new Chapter 11 plan that would be feasible and could repay all of his creditors in accordance with the requirements of Section 1129 and the Bankruptcy Code;

13. At the September 15, 2010 hearing on the Motion to Convert, the U.S. Trustee and the attorneys for HUD, Grand Prairie

**Page 6**

and HSBC Bank, who had participated in the required 2004 Examination, indicated that they supported the Motion to Convert because they did not believe that Livecchi intended to list and sell any of his income-producing properties or sell any of his other assets in order to fund a plan, but rather, he continued to believe that the Malpractice Action should be the primary basis to fund a plan. The Court granted the Motion to Convert for cause, and as being in the best interests of creditors, as expressed by the creditors, including HUD, Livecchi's largest creditor. Thereafter, on September 21, 2010, an Order converting the case to Chapter 7 (the "Conversion Order") was entered;

14. On September 21, 2010, Kenneth W. Gordon, Esq. (the "Trustee"), was appointed as Livecchi's Chapter 7 Trustee;

15. In October 2010, after the conversion to a Chapter 7 case, the Trustee made various motions to operate The Barrington, and to engage a property manager, Jackson Property Company (the "Property Manager") and a broker to sell the Barrington, William C. Jennings Co. (the "Broker"), which motions were ultimately granted by the Court over the objection of Livecchi. The Court granted the motions to appoint the Property Manager and Broker, which were supported by HUD and Grand Prairie after: (a) it found those entities to be experienced and qualified; and (b) although Livecchi indicated that he had been in contact with more qualified entities,

he would not disclose them, and he further indicated that these entities would not deal or work with the Trustee anyway;

16. On November 17, 2010, Livecchi filed a document which terminated his attorney and indicated that he would proceed on a *pro se* basis;

17. Livecchi filed various motions to reconsider and to stay the Conversion Order, which were denied by the Court. Livecchi also appealed the Conversion Order to the United States District Court for the Western District of New York (the "District Court");

18. On December 21, 2010, the District Court dismissed the appeal of the Conversion Order, which was appealed by Livecchi to the United States Circuit Court of Appeals for the Second Circuit on January 19, 2011;

19. Livecchi has filed two separate motions to dismiss his case for substantial abuse under Section 707(b)(1), each of which was opposed by HUD, and which the Court denied on the basis that Livecchi's debts, including the HUD Judgment, were not primarily consumer debts, but rather were primarily business debts;

20. Sherrie Livecchi, Livecchi's spouse, filed a motion to vacate the Conversion Order and reconvert the Chapter 7 case to a Chapter 11 case, which HUD objected to, and which, after several adjournments, the Court denied, because each of the proposed Chapter 11 plans that she indicated she would file if the Court granted the reconversion, failed to adequately provide for the

payment of the HUD Judgment, so that none of these proposed plans could have been confirmed under Section 1129;

21. In virtually every pleading that Livecchi has filed in response to any matters before the Court since the conversion and the appointment of the Trustee, the Property Manager and the Broker, Livecchi has asserted that: (a) those parties have improperly operated The Barrington and have severely diminished its value, and this Court has wrongfully permitted the Trustee, Property Manager and Broker to proceed; (b) Livecchi has commenced an action against the Trustee in a State Court in Texas; and (c) Livecchi has now filed or will file an action against the Trustee in the United States District Court for the Northern District of Texas (the "Texas District Court");

22. On January 27, 2011, the Trustee filed a Motion for the Turnover of Assets (the "Turnover Motion"), which requested the turnover by Livecchi of his non-exempt, income-producing properties, other than The Barrington, and various non-exempt vehicles which he owns. Opposition to the Turnover Motion was interposed by Sherrie Livecchi, which asserted that some of the income-producing properties were jointly owned. The Court adjourned the hearing on the Turnover Motion to February 16, 2011, so that the Trustee and the attorney for Sherrie Livecchi could enter into negotiations with respect to whether Sherrie Livecchi wished to purchase the estate's interest in those joint properties. Livecchi opposed the

**BK. 09-20897**

Turnover Motion on the grounds that if the Trustee had not devalued The Barrington by mismanaging it, its sale would have paid off all of his creditors in full, including the HUD Judgment;

23. On February 4, 2011, the Trustee filed a motion to approve a sale of The Barrington for one million dollars ($1,000,000.00) (the "Sale Motion"). A hearing on the Sale Motion is scheduled for March 2, 2011;

24. On February 11, 2011, the Trustee filed a Notice of Cessation of the Operation of the Debtor's Business known as The Barrington Apartments, which was filed for informational purposes only;

25. On February 11, 2011, Livecchi filed an Emergency Motion ordering Chapter 7 Trustee, Kenneth Gordon, to Hire an Independent Insurance Claim Adjuster to Assess the Damage Caused by the Negligence of the Trustee and Kathleen Schmitt, an Assistant U.S. Trustee. The Motion was denied by the Court on February 14, 2011, only to the extent that Livecchi requested the Motion be heard on an emergency basis, on the grounds that it failed to demonstrate: (a) why the relief requested was an emergency; or (b) that a demand for the relief requested had been made on the Trustee and refused;

26. At the February 16, 2011 adjourned return date of the Turnover Motion, over the objection of Livecchi, the Court granted the Motion as to all of the non-jointly-owned property, and further adjourned the Motion with respect to the jointly-owned property

**BK. 09-20897**

until March 16, 2011. The Court also advised Livecchi in open court that it was denying his Recusal Motion, but that it would issue a written Decision & Order. At that hearing, Livecchi advised the Court that he would be adding it as a defendant in his action against the Trustee in the Texas District Court.

**B.     THE RECUSAL MOTION**

The Recusal Motion asserted, as some of the grounds for the Court to recuse itself and for a stay of all actions in Livecchi's Chapter 7 case, that:

1.     Although the Court had been made aware on numerous occasions of the tort claim that Livecchi filed against the Trustee in a Texas State Court, and of a lawsuit that Livecchi has alleged to have filed in the Texas District Court against the Trustee, this Court has not removed the Trustee, and it has denied Livecchi's emergency motion to remove the Trustee, even though a conflict of interest exists, due to the commencement and pendency of those two lawsuits;

2.     Even though all parties agreed that a proposed plan by Sherrie Livecchi in connection with her motion to vacate the Conversion Order and reconvert the case to a Chapter 11 case was in the best interests of the creditors and the estate, the Court denied the motion and "illegally imprisoned Livecchi in the Chapter 7 case;"

3. The Court has allowed the Trustee to neglect The Barrington, which has caused severe financial damage to the property, and the Court is equally as liable as the Trustee because it failed to do anything to stop the Trustee's willful neglect of The Barrington;

4. Livecchi's Chapter 11 case was illegally converted to a Chapter 7 case without cause;

5. "Judge Ninfo has gone as far as to mock and laugh at the debtor while he continues his retaliatory actions against the debtor. It is the debtor's opinion that Judge Ninfo's reckless mocking of the debtor can be taken one of two ways: (1) Judge [Ninfo] after retaliating is either so happy due to the profit he will make off the estate while he illegally strips the debtor of all of his possessions and assets; or (2) Judge [Ninfo] has a mental illness for which he should seek medical attention and should be removed from the bench until he is found competent[;]"

6. "Judge Ninfo has even attempted to intimidate the debtor by sending the FBI and U.S. Marshals [to] question the debtor after the Judge laughed at the debtor in open court[;]"

## DISCUSSION

28 U.S.C. §455 requires that a United States Judge disqualify himself when he has a personal bias or prejudice concerning a party or where his impartiality might reasonably be questioned.

**BK. 09-20897**

This Court will not at this time recuse itself, or stay any of the proceedings in the Livecchi Chapter 7 case, for the following reasons:

1. The Court has no actual conflict of interest in the case, as specifically set forth in, or within the meaning and intent of, 28 U.S.C. § 455, and Livecchi has not demonstrated that any such actual conflict exists;

2. The Court is not in any way biased or prejudiced against Livecchi, and the Court is certain that anyone, with the possible exception of Livecchi and Sherrie Livecchi, who has attended any of the hearings conducted in the Livecchi case would confirm that there has not been even the slightest appearance of impropriety in the manner which the Court has handled this case. Furthermore, the Court's decisions have all been supported by the facts, circumstances, evidence and law presented, and do not indicate any bias or prejudice or an appearance of impropriety. Unfortunately, Livecchi, like so many *pro se* litigants, appears to believe that if a Judge does not agree with them and rules against them, the Judge must be bias and prejudice against them;

3. On the facts, circumstances, evidence and law presented, granting the Motion to Convert under Section 1112 was warranted. The Motion to Convert was brought by the U.S. Trustee, which is charged with monitoring Chapter 11 cases,

**Page 13**

and it was supported by all of the creditors who appeared at the hearings on the Motion, including HUD, Grand Prairie and HSBC Bank;

4. None of the Chapter 11 plans proposed by either Livecchi or Sherrie Livecchi could have been confirmed by this Court, pursuant to Section 1129, including for the reason that they failed to adequately provide for the payment of the HUD Judgment in any way permitted by Section 1129;

5. The Court acknowledges that The Barrington is a difficult property to operate, since: (a) it appears to require substantial repairs, and, according to Grand Prairie, suffered a number of pre- and post-petition code violations; (b) its tenants have caused damage to the property; and (c) recent unusual weather has resulted in damage to the property. However, the Trustee has engaged an experienced and qualified Property Manager and an experienced and qualified Broker, and together it appears that they have managed the property and listed it for sale in the exercise of their best collective business judgment;

6. Livecchi appears to continue to fail to understand that in a Chapter 7 case, the primary duties of a trustee, as set forth in Section 704(a)(1), are to collect and reduce to money the property of the estate, and to close the estate as expeditiously as possible, for the best interests of the

**Page 14**

parties. That is what the Trustee has been attempting to do, and his actions, although not to Livecchi's liking, are in the furtherance of his duties;

7. It appears from Livecchi's allegations with respect to the Court, the Trustee and the bankruptcy system, that: (a) he has lost sight of the fact that he filed a bankruptcy petition because he was unable to satisfactorily deal with all of his financial affairs without the aid of the automatic stay, including, most significantly the HUD Judgment, which he failed to pay, bond or have stayed; and (b) his failures to pursue the appeal of the HUD Judgment and propose a consensual or confirmable Chapter 11 plan, are what resulted in the conversion to a Chapter 7 case;[1]

8. This Court never sent the FBI and U.S. Marshals Service to question the Debtor. Rather, the Court reported an event, which took place in its courtroom, and was transcribed in the transcript of that Court hearing, to the U.S. Marshals Service, as it is required to do whenever there is a perceived threat to a Federal Bankruptcy Judge. Thereafter, the U.S.

---

[1] After nearly thirty-seven years in and around the Bankruptcy Courts, the Court believes that entrepreneurial Chapter 11 filers like Livecchi often fail to fully appreciate that a conversion to Chapter 7 is a real possibility when they fail to move their Chapter 11 case forward for the benefit of their creditors, or otherwise act or fail to act, such that conversion is warranted, for cause under Section 1112. They appear to believe that either everything will work out the way they want it to in the Chapter 11, or, if it does not, the case will simply be dismissed, and they will go back to putting off their creditors some other way.

**Page 15**

>
> Marshals Service elected to proceed the way it did under its procedures and guidelines. The incident, to the best of this Court's recollection, was that Livecchi made an allegation that the Court ignored one of his requests, when in fact the Court had clearly considered his request and ruled against him. When Livecchi made this outrageous and untrue allegation, the Court did smile, but it was not laughing at Livecchi, it was just smiling at his outrageous and untrue statement. As one television talk show host has said on his show, guests are entitled to their opinions, but not to their own set of facts. Contrary to Livecchi's assertions, this Court believes that it has been very patient with him, as it is with all *pro se* litigants, but there are times, such as with that incident, where they make such outrageous and frivolous allegations, that it is difficult to take them seriously. Livecchi accused the Court of thinking it was funny, which the Court denied. As Livecchi left the Courtroom, he said words to the effect of, "you won't think it's so funny;"

9. This Court has no idea why Livecchi believes or would assert that the Court could financially benefit or profit from "imprisoning" him in a Chapter 7, or allowing the Trustee to continue to administer the estate in his best business judgment and in the performance of his Section 704 duties,

**Page 16**

which include liquidating the assets of the estate for the benefit of creditors;

10. Livecchi does not seem to understand that it is not the Court, but the U.S. Trustee that oversees the panel of trustees in the day-to-day administration of the estates assigned to them. To the best of the Court's knowledge, the U.S. Trustee has not taken any action in connection with the Trustee's administration of the Livecchi case, and it has not brought a motion to have the Trustee removed, even though Livecchi has advised it on numerous occasions of his concerns about the Trustee's actions and inactions;

11. Livecchi may not like where he finds himself, but clearly he lost credibility with the U.S. Trustee and his creditors when he failed to meaningfully move his Chapter 11 case forward in a way that would pay his creditors through a consensual Chapter 11 plan or one that could be confirmed under Section 1129. Unfortunately, he appears to fail to realize that, having lost credibility with the interested creditors who have actively participated in the case, including HUD, permitting Livecchi or Sherrie Livecchi to manage the estate's assets would never be an alternative to the Trustee administering those assets. He further appears to fail to realize that his failure to cooperate with the Trustee, including by bringing forward the $2.8 million purchase offer that he alleged he had

   obtained for The Barrington, or identifying a different qualified property manager or broker, other than himself or Sherrie Livecchi, was not the best course of action on his part;

12. Although Livecchi asserts that the Court is biased and prejudiced against him, it was the Court that allowed him the opportunity to file late opposition to the Motion to Convert, and to have one last chance to regain his credibility with the interested parties when it adjourned the Motion for a 2004 Examination;

13. Commencing lawsuits against a trustee or a Bankruptcy Judge as a possible, self-created conflict of interest strategy, is not something that can be permitted by this or any federal court, or the bankruptcy or federal court systems;

14. The other allegations made by Livecchi in the Recusal Motion are too numerous, repetitive and meritless to warrant addressing separately; and

15. This Court, which is a single Judge Court in the Rochester Division of the Western District of New York, must scrutinize recusal motions so as not to establish precedent that might encourage forum shopping and prejudice litigants.

BK. 09-20897

## CONCLUSION

The Recusal Motion is in all respects denied, as is the request for a stay of all actions and proceedings in this Chapter 7 case. The Court will continue, as it has to date, to make decisions on any motions presented to it in this case, based upon the facts, circumstances, evidence and law presented.

**IT IS SO ORDERED.**

```
         /s/
```
**HON. JOHN C. NINFO, II**
**U.S. BANKRUPTCY JUDGE**

**Dated: February 17, 2011**

**Page 19**